## SEPARATION AGREEMENT AND GENERAL RELEASE

The parties to the Separation Agreement and General Release ("Agreement") are Lisa Beattie ("Beattie") and Kohler Co. and its subsidiaries, related entities, successors and assigns (collectively "Kohler" or "Company").

## RECITALS

1. Beattie began employment with the Company on 1/6/1997. Beattie held the position of SR. Material Planner/Scheduler.

2. The employment relationship between Kohler and Beattie ended 9/30/2019 (the "Separation Date").

3. The parties desire to settle, fully and finally, all potential claims Beattie might have against Kohler including, but not limited to those items arising out of or relating to Beattie' employment with Kohler and the ending of that employment.

4. Beattie acknowledges and agrees that she has been paid all wages, benefits, and other compensation owed to her by Kohler through and including her Separation Date, and that she is not entitled to any additional or future compensation or benefits arising out of her employment with Kohler, other than as detailed herein.

NOW, THEREFORE, in consideration of the terms, conditions, and promises set forth herein, Beattie and Kohler (collectively the "Parties") hereby agree as follows:

## TERMS AND CONDITIONS

1. <u>Non-Admission of Liability</u>. This Agreement is entered in compromise and full and complete satisfaction of all claims or potential claims arising out of, related to or in connection with Beattie's employment by Kohler and the ending of that employment. Beattie acknowledges that the execution of this Agreement and the payment of consideration hereunder shall not be construed in any way as an admission of wrongdoing or liability on the part of Kohler or any other person or business entity. The sole purpose for the Parties to enter into this Agreement is to mutually resolve all issues surrounding Beattie's employment, and the termination of that employment, and to confer certain transition benefits on Beattie upon her separation from the Company.

2. <u>Consideration</u>. As consideration for this Agreement, Kohler agrees to provide Beattie with the following severance package:

   a. <u>Severance Pay</u> - Kohler will pay Beattie a total gross severance payment of $44,897.00 representing 36 weeks of her base pay. Beattie shall receive this severance payment on the regular payroll date commencing after her Separation Date and after execution of this Agreement. This payment will be subject to tax withholding and other required deductions. Beattie understands and agrees that this severance payment shall not be deemed compensation for purposes of any of Kohler's qualified retirement plans or other benefit programs, and payment of this severance pay does not entitle her to any

**EXHIBIT B**

retirement plan contributions by Kohler for her benefit or account. Beattie further understands that she will not be entitled to any other compensation or bonus amounts other than as described in this Agreement.

b.  Health Benefit Coverage – Beattie's health benefit coverage (medical, dental and vision, if any) will be continued for 180 days after her Separation Date. Beattie will remain responsible for paying her portion of the cost of such coverage during said time period through payroll deduction. This initial coverage continuation time period will be applied against the COBRA extension period should Beattie elect continued coverage under COBRA. All other benefits (other than medical, dental, and vision, if any which will continue in effect as described above) will cease immediately on her Separation Date. Beattie shall not be entitled to the value of the health benefit coverage should she choose not to utilize, or not fully utilize, such coverage.

3. Complete Release of Kohler and Related Parties. In consideration of the promises set forth in this Agreement, Beattie does hereby, for herself and for her heirs, representatives, attorneys, executors, administrators, successors, and assigns, release, acquit, remise, and forever discharge Kohler and its and their officers, directors, shareholders, employees, successors, agents, representatives, contractors, assigns, affiliated or related businesses and each of them, from any and all actions, causes of action, obligations, costs, expenses, damages, losses, claims, liabilities, suits, debts, demands, and benefits, of whatever character at law or in equity, known or unknown, suspected or unsuspected, matured or immatured, of any kind or nature whatsoever, arising out of, related to, or in connection with Beattie's employment with the Company and the ending of such employment.

4. Further Release. Beattie acknowledges that there are various local, state and federal laws that prohibit employment discrimination on the basis of age, color, race, gender, gender identity or expression, marital status, national origin, sexual orientation, citizenship, disability, religion, veterans' status or other legally protected characteristics, and that these laws and regulations are enforced through the courts and agencies such as the United States Equal Employment Opportunity Commission (the "EEOC"), the United States Department of Labor, and State Fair Employment Practices agencies. These laws include, but are not limited to, the Federal Age Discrimination in Employment Act (as amended by the Older Workers Benefit Protection Act), the Americans with Disabilities Act (as amended), Title VII of the Civil Rights Act of 1964 (as amended), and State and Local statutes, regulations, and ordinances forbidding employment discrimination. In consideration of the payments and benefits provided under this Agreement, Beattie waives any rights she may have under these or any other federal, state, or local laws, including, but not limited to, labor and employment-related laws, ERISA, WARN, wage and hour laws, whistleblowing laws, and any other regulations, statutes, ordinances, or the common law with respect to her employment relationship or the end of that relationship. It is expressly understood by Beattie that, among the various rights and claims being waived by her in this Agreement are those arising under the federal Age Discrimination Employment Act of 1967 (29 U.S.C. Sec. 621. et seq.) and as amended. The Parties intend this Paragraph 4 to be as broad as the law permits. However, this Agreement does not apply to claims or rights under the federal Age Discrimination in Employment Act, as amended by the Older Workers Benefit Protection Act, which may arise after this Agreement is executed. This Agreement also does not prevent Beattie from filing a charge with, or participating in an investigation by, any third-party federal governmental

agency, including the EEOC. While nothing contained in this Agreement shall be interpreted to prevent the EEOC or other federal government agencies from investigating and pursuing any matter which it deems appropriate, Beattie understands and agrees that, by signing this Agreement, she is waiving any and all rights she may have to any individualized recovery of any value obtained on her behalf, including reinstatement, damages, remedies or other relief, as to any claims she has released and any rights she has waived as a result of her execution of this Agreement.

5. <u>Confidentiality and Non-Disclosure, Employment Agreement and Other Obligations</u>. Beattie agrees that she will keep the existence, facts, terms, and amount of this Agreement confidential and that she will not hereafter disclose any information concerning this Agreement to anyone except her spouse, attorneys, and certified financial planners, if any, provided that she may make such disclosures as are required by law and as are necessary for legitimate law enforcement or compliance purposes. Should Beattie breach the covenant undertaken under this paragraph, Kohler will be entitled to recover from Beattie all amounts and other benefits paid to her under this Agreement; to discontinue all payments and benefits under this Agreement; and/or to seek relief, including, but not limited to, injunctive relief and other civil relief, as the Company may deem necessary.

Beattie also agrees that she will not disclose or divulge to any person or entity, unless required to do so by law, any trade secret, personal information, confidential business or technical information of the Company or any affiliate of the Company, as well as any information regarding the business and/or personal affairs of any present or former directors, owners, officers, shareholders, agents, contractors, members, administrators, representatives and/or employees of the Company or any affiliate of the Company to which Beattie has been privy during the time that she was an employee of the Company. If Beattie violates the provisions of this paragraph, she acknowledges and agrees that the Company will be entitled to recover from Beattie all amounts and other benefits paid to her under this Agreement; to discontinue the payments and benefits described above, and/or to seek relief, including, but not limited to, injunctive relief and other civil relief, as the Company may deem necessary.

Beattie acknowledges and agrees that the Employment Agreement that she signed with the Company, including, but not limited to, the non-compete and confidentiality provisions in such agreement shall continue to apply after her separation. Beattie also acknowledges and agrees that she will not participate in any manner in any attempt to solicit or encourage current Kohler associates or contractors to leave Kohler to apply for employment or begin working at an employer that Beattie may work at in the future or any other employer. If Beattie violates the provisions of this paragraph, she acknowledges and agrees that the Company will be entitled to recover from Beattie all amounts and other benefits paid to her under this Agreement; to discontinue the payments and benefits described above, and/or to seek relief, including, but not limited to, injunctive relief and other civil relief, as the Company may deem necessary.

6. <u>Non-Disparagement</u>. Beattie agrees to maintain a positive and constructive attitude and demeanor towards the Company and its related entities or affiliates, its current or former directors, officers, owners, shareholders, representatives, administrators, members, employees, contractors, and agents; and Beattie agrees not to make knowingly false or defamatory comments or statements about the Company and its related entities or affiliates,

and its or their business reputation, or the personal, professional, or business reputation or affairs of the Company's or its related entities or affiliates' current or former directors, officers, owners, shareholders, representatives, administrators, members, employees, contractors, and agents to anyone, including, but not limited to, current and former Company customers, contacts, employees, members, vendors, referral sources, and any other outside sources. If Beattie violates this provision, she acknowledges and agrees that the Company will be entitled to recover from Beattie all amounts and other benefits paid to her under this Agreement; to discontinue the payments and benefits described above, and/or to seek relief, including, but not limited to, injunctive relief and other civil relief, as the Company may deem necessary.

7. Agreement is Knowing and Voluntary. Beattie understands and agrees that she:

   a. Has had a reasonable amount of time to consider this Agreement before executing it.

   b. Has carefully read and fully understands all the terms of this Agreement.

   c. Is, through this Agreement, releasing Kohler and its related entities and other persons from all claims she may have against Kohler or them.

   d. Knowingly and voluntarily agrees to all the terms set forth in this Agreement.

   e. Knowingly and voluntarily intends to be legally bound by the same.

   f. Was advised, and hereby is advised in writing, to consider the terms of this Agreement and consult with any attorney of her choice prior to executing this Agreement.

   g. Has, if she wishes, up to forty-five (45) days to consider this Agreement prior to signing it, and seven (7) days after signing this Agreement to revoke her signature. This Agreement shall not become effective, enforceable, or payable until such revocation period has expired without her revocation. (See *Exhibit 1* for information on others selected to receive severance pay in the September 2019 Reduction in Force.)

8. No Representations. The parties acknowledge that, except as expressly set forth herein, no representation of any kind or character has been made to induce the execution of this Agreement.

9. Governing Law. This Agreement shall be governed by and interpreted under the laws of the State of Wisconsin applicable to contracts made and to be performed entirely within such State.

10. Miscellaneous.

    a. The language of all parts in this Agreement shall be construed as a whole, according to its fair meaning, and not strictly for or against either party.

    b. Should any provision in this Agreement be declared or determined to be illegal or invalid by a court of competent jurisdiction, the validity of the remaining parts, terms, or

provisions shall not be affected thereby, and the illegal or invalid part, term, or provision shall be deemed not to be part of this Agreement, and all remaining provisions shall remain valid and enforceable.

c. Except for any agreements signed by Beattie covering restrictive covenants (which remain in full force and effect), if any, this Agreement sets forth the entire Agreement between the parties and fully supersedes all prior agreements and understandings between the parties pertaining to the subject matter of this Agreement.

PLEASE READ CAREFULLY. THIS AGREEMENT INCLUDES A RELEASE OF CLAIMS.

_____  9/18/19
Lisa Beattie                     Date

KOHLER CO.

By: _____ 9/18/19
                                  Date